IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAHNAZ HASER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KRISTAL BROWN and MICHAEL ) <br> HORVATH, ) <br> ) <br> Defendants. ) | Civil Action No. 18-1383 <br> Magistrate Judge Maureen P. Kelly <br><br> Re: ECF No. 12 |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Mahnaz Isabella Haser ("Haser"), a native of Iran and citizen of Sweden, filed this action against Defendants Kristal Brown and Michael Horvath, (collectively, "USCIS"), pursuant to 8 U.S.C. § 1421(c) seeking de novo review of the denial of her naturalization application.

Presently before the Court is USCIS's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment. ECF No. 12. The parties have filed several exhibits in support and in opposition to the pending motion, and Haser has filed a series of statements supporting her claim that she was wrongfully denied naturalization. ECF Nos. 14, 17, 18, 24-28. For the reasons that follow, Haser is ineligible for naturalization as a matter of law. Accordingly, the Motion for Summary Judgment will be granted.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts, taken from the pleadings and the exhibits filed by the parties, are undisputed. In the Complaint, Haser acknowledges that she is a citizen of Iran and Sweden. ECF No. 3 at 4. On February 28, 2001, Haser completed a Form I-539, "Application for Asylum,"

using the name Mahnaz Isabella Khatibi. ECF No. 14-1. The form reflects that it was prepared by Khosrow Jahaban, based on information provided to him by Haser. Mr. Jahaban attests that he read the completed application to Haser for her verification, and that Haser signed the application attesting to the veracity of the information set forth therein. Id.

Attached to the Application for Asylum is a statement, in which Haser represents that she does not hold citizenship in any country other than Iran. Haser further claims that her father and grandfather were members of the intelligence service of the Shah of Iran, and that she was married to an air force fighter pilot who went missing in 1994. Haser states that after her husband's disappearance, members of the Revolutionary Guard imprisoned her for five years on suspicion of aiding his escape from Iran. During this period, Haser represents that prison guards repeatedly raped and tortured her. Haser states that she left Iran with her daughter on November 4, 2000, made her way to Turkey and then, with a forged passport, traveled to Germany, France, Mexico, and arrived in the United States on December 5, 2000, traveling first to San Diego and eventually settling in Los Angeles. Id. Haser claimed that she feared future persecution and death if returned to Iran because of her political opinion and religion. ECF No. 14-1.

In September 2001, USCIS interviewed Haser in connection with her Application for Asylum and provided her an opportunity to correct facts set forth in her application. ECF No. 14-1 at 9. Haser made four corrections to her application. First, she clarified that she was not in removal, deportation or exclusion proceedings; second, she stated that she had not entered the United States before December 5, 2000, and, at that time, she entered without inspection; third, she entered with her daughter, without inspection; and fourth, her son "Olaf Khatabi" remained in Iran. With these revisions, Haser declared that she understood that any false statements of material fact were punishable under applicable perjury laws, and that a frivolous application for asylum

2

would render her permanently ineligible for any benefits under the Immigration and Nationality Act. ECF 14-3. Haser's application for asylum from Iran was granted on September 21, 2001. ECF No. 14-4.

In September 2002, Haser submitted Form I-485, Application to Register Permanent Resident or Adjust Status, using the name Mahnaz Isabella Khatibi. ECF No. 14-5. Haser stated she had not "by fraud or willful misrepresentation of a material fact, ever sought to procure or procured, a visa or other documentation, entry into the U.S. or any immigration benefit." Id. at 4. Haser's application was granted on January 27, 2006, and Haser became a legal permanent resident.

Three years later, USCIS received an anonymous letter conveying that Haser's asylum application was fraudulent, that she was a citizen of Sweden, and that she was receiving monthly financial benefits from the Swedish government. ECF No. 14-6. The letter attached a copy of a passport issued to Isabella Mahnaz Gustafsson, born May 5, 1965, with a photo of Haser, and listing Tehran as Ms. Gustafsson's place of birth. The passport, issued on June 25, 1998, contained stamps revealing that Ms. Gustafsson had traveled to the United States five times during 1999.

On September 8, 2010, Haser submitted an Application for Naturalization, using the name Mahnaz Isabella Haser. ECF No. 14-9. Haser identified her son as "Olaf Gustafsson," and revealed that he was born in Sweden and was a resident of Sweden. ECF No. 14-9 at 7. USCIS interviewed Haser in connection with her application on March 8, 2011. During the interview, Haser made 11 corrections to her application, disclosed two prior marriages, and listed her prior spouse as "George Abici" with a marriage lasting one year, from 1989 to 1990. Id. at 6. Haser again attested that the information in the application was truthful and that she had never provided false information to obtain an immigration benefit.

3

The record reflects that Haser appeared for a second interview at the USCIS Los Angeles Field Office on June 21, 2011, and again affirmed that she has only been a citizen of Iran and no other country, and that she had never been issued a passport from any country. ECF No. 14-10 at 5. Haser again stated that she was imprisoned in Iran from 1994 to 1999, and that she had entered the United States just once before applying for asylum in 2001. Haser represented that she had been married to Georg Gustafsson, but stated the marriage took place in Iran in 1991. Id.

USCIS contacted officials of the Embassy of Sweden to determine whether it had issued a passport to Isabella Mahnaz Gustofsson as a citizen of Sweden. The Consul General confirmed that a Swedish passport was validly issued on June 25, 1998, to Isabella Mahnaz Gustafsson, listing Tehran as her place of birth and May 5, 1965 as her birthday. ECF No. 14-7.

After her June 2011 interview, Haser contacted USCIS and represented that she had moved to Pennsylvania. USCIS transferred her case to the Pittsburgh Field Office. The record reflects that Haser, accompanied by counsel, appeared to present testimony relative to her application. ECF No. 14-10 at 5. Under oath, Haser revealed that she was a citizen of Iran and held an Iranian passport but moved to Sweden in 1986, where she resided until the she entered the United States in 2000. Haser stated that she holds a Swedish passport and that she has been married three times. During her interview, Haser alleged that her parents forced her to marry her first husband at the age of nine, and that the marriage was never recorded. USCIS noted the discrepancy in her asylum application, reflecting that Haser's first marriage to Safari Abbas occurred when she was 23 and he was 38. Haser stated that both of her children were born in Sweden and she presented a Swedish population register, revealing that she was born in Iran, and immigrated to Sweden in 1987. The register reflects her marital status as divorced in 1999. Id.

When questioned about discrepancies in her asylum application, Haser said that information may have been falsified, and alleged that the USCIS Officer who interviewed her in 2001 "may have" assisted and facilitated approval of her application. Id. Haser was presented with a copy of her Swedish passport showing multiple trips to the United States before 2000, and she conceded that the passport was hers and that she "may have" traveled to the United States multiple times before her December 5, 2000 entry. Id.

USCIS determined that Haser's asylum was based on false information; specifically, that during the time she alleged she was imprisoned and persecuted in Iran, she was "firmly resettled in Sweden." Id. USCIS therefore concluded Haser was ineligible for naturalization under Section 318 of the Immigration and Nationality Act and denied her application for naturalization. Id.

Haser did not appeal the denial. Instead, Haser filed a new Application for Naturalization, claiming that she was the victim of unscrupulous conduct perpetrated by the USCIS official who conducted her 2001 interview. ECF No. 14-11 at 23. Haser stated that the official suggested he would approve her application, "as long as [she] promised to out with him on a date of some sort." Id. She further alleged that her asylum application was prepared by "an unscrupulous notario" who "failed to state" that she had resided in Sweden. Id.

On September 6, 2017, the USCIS denied Haser's second application based on Haser's concession that she completed and signed both the asylum application and the I-495 Application for Naturalization "in [her] own hand." ECF No. 14-12 at 3. USCIS also cited Haser's failure to present evidence to support her allegations that she was a victim of fraud and concluded that Haser deliberately provided false information in her asylum application to gain immigration benefits. Under these circumstances, Haser failed to show that she was lawfully admitted for permanent residence, and USCIS determined that Haser was ineligible for naturalization.

5

On September 26, 2017, Haser submitted a request for hearing stating that she was pursuing naturalization by virtue of her most recent marriage to a United States citizen. ECF No. 14-13 at 3. In addition, she stated she was "a victim of immigration translators, an attorney and a U.S. immigration official." Id. Haser represented that she did not prepare her asylum application "in her own hand as her English at the time was not as proficient as it is today." Id. The USCIS held the hearing on April 18, 2018 and reaffirmed the denial of her application for naturalization on September 19, 2018. Haser timely filed the instant federal action with an application to proceed in forma pauperis.

In her Complaint, Haser alleges she is disabled, suffers a fast heartbeat, was "manipulated," and has been wrongfully denied citizenship twice after three interviews. ECF No. 3, 3-2. She asks that justice be served by permitting her to stay in the United States as a citizen, by virtue of her most recent marriage to David Haser, and the length of time she has resided in the country as a permanent resident. Id.

USCIS has filed the pending Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, contending that Haser fails to state a claim for relief and is otherwise not eligible for naturalization because she was not lawfully admitted for permanent resident status in the United States. ECF Nos. 12, 13. USCIS contends that there is no dispute that to secure asylum and permanent resident status, Haser failed to provide truthful and accurate information to immigration officials, intentionally misrepresented her status as a refugee, and failed to disclose that she had been firmly resettled in Sweden. USCIS states that these acts render any further adjustment of status unlawful. Id.

In opposing the pending motion, Haser states that she fled Sweden in 2000 because she was the victim of domestic violence and that Swedish police failed protect her. ECF No. 18 at 1-

2. Haser has submitted what she represents to be a transcribed record of a Swedish police investigation in 2011 of her ex-husband Georg Gustafsson for alleged physical and psychological abuse of her teen-aged son Olaf, who remained in Sweden after Haser moved to the United States. ECF No. 18-1 and 18-2. The record contains Haser's allegations of past spousal abuse as reported in 2011. Haser contends that the USCIS official who conducted her asylum interview in 2001 "never let her explain" her situation in Sweden, and thereby prevented her from seeking asylum based on her status as a domestic violence victim. Haser also claims that she was the victim of a translation agency, an attorney and a paralegal, who prepared the application for her signature. ECF No. 18 at 5. Haser points to a handwritten document that a "translation service" provided to her to submit with her asylum application.[1] ECF No. 18-4 at 1, 7. Haser states that she only signed but did not draft the document. Id. at 7.

Haser further supports her opposition to the pending motion with a series photos and text messages from 2017-2018 purportedly between Haser and the USCIS official who conducted her initial asylum interview in 2001. ECF No. 25-1, 25-2. Haser apparently sought him out in 2017 to obtain evidence that the two had an allegedly improper relationship at some point after he conducted her asylum interview. ECF No. 25-2 at 33, 37, 60. Haser also provides evidence of a complaint she lodged against the attorney she retained in 2016 to assist with her second application for naturalization and copies of contact information related to an individual she alleges completed

---

[1] Haser has conceded under oath that she prepared the statement attached to her asylum application and has acknowledged that the application contains falsehoods. ECF No. 14-1 at 10-18, ECF No. 14-10. As more fully set forth *infra*, when asylum and permanent resident status are procured by the fraud of a third party, naturalization remains barred because permanent resident status was not lawfully obtained. Under these circumstances, Haser's exhibit does not raise a genuine issue of fact regarding the procurement of her asylum by fraud. The Court notes, however, that there are substantial differences between the statement provided by Haser in opposition to the pending motion and the statement attached to her original asylum application, a copy of which has been provided to the Court. Defendants' copy of the original application contains Haser's handwritten statement on 9 white unlined pages. The document Haser represents is a copy of the statement she submitted is on 6 yellow lined pages. Haser does not explain this discrepancy.

7

her first application. ECF Nos. 26-1, 26-3. Based on this evidence, Haser contends that she is entitled to naturalization.

## II.    STANDARD OF REVIEW

### A. Motion for Summary Judgment

USCIS filed this motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. Rule 12(d) of the Federal Rules of Civil Procedure requires a motion to dismiss to be converted to one for summary judgment if a court considers matters outside the pleadings. When reviewing a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted).

Here, the parties have submitted exhibits not referenced in or attached to Haser's Complaint and not of public record. USCIS provided notice to Haser through its motion and brief that it sought review of the record pursuant to Rule 56. ECF No. 13 at 1, n. 2. As such, Haser was on notice that the Court could resolve the motion as one for summary judgment, and she has responded with hundreds of pages of exhibits and statements in support of her claim that she was wrongfully denied naturalization. ECF Nos. 18, 25, 26.

Under Rule 56(a) of the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts

showing that there is a genuine issue for trial." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Thus, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (quoting Petruzzi's IGA Supermarkets v. Darling-Del. Co., 998 F.2d 1224, 1230 (3d Cir. 1993)).

### B. Denial of Naturalization

Pursuant to 8 U.S.C. § 1421(c), a district court's review of naturalization denials "shall be de novo, and the court shall make its own findings of fact and conclusions of law...." "As a consequence, judicial review of naturalization denials 'is not limited to any administrative record but rather may be on facts established in and found by the district court de novo.'" Saliba v. Attorney Gen. of United States, 828 F.3d 182, 189 (3d Cir. 2016), quoting Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002); and citing Abulkhair v. Bush, 413 F. App'x. 502, 507–08 (3d Cir. 2011).

9

In making this determination, however, Haser bears the burden of proof to establish that she is entitled to naturalization, which requires evidence of her compliance with all of the prerequisites to citizenship:

> Significantly, an applicant for naturalization has the burden of proving "by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b); see also Bagot v. Ashcroft, 398 F.3d 252, 256–57 (3d Cir. 2005); Abulkhair, 413 Fed. App'x. at 508. "[S]trict compliance with all the congressionally imposed prerequisites to" citizenship is required, Fedorenko v. United States, 449 U.S. 490, 506, 101 S. Ct. 737, 747, 66 L.Ed.2d 686 (1981); United States v. Szehinskyj, 277 F.3d 331, 334 (3d Cir. 2002), and "the burden is on the alien applicant to show his eligibility for citizenship in every respect," INS v. Pangilinan, 486 U.S. 875, 886, 108 S.Ct. 2210, 2217–18, 100 L.Ed.2d 882 (1988) (quoting Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637, 87 S. Ct. 666, 670–671, 17 L.Ed.2d 656 (1967)). Thus, as the Supreme Court has explained, "when doubts exist concerning a grant of [citizenship], generally at least, they should be resolved in favor of the United States and against the claimant." United States v. Manzi, 276 U.S. 463, 467, 48 S.Ct. 328, 329, 72 L. Ed. 654 (1928) (citation omitted); see also Bagot, 398 F.3d at 257; Ogundoju v. Att'y Gen., 390 Fed. Appx. 134, 137 (3d Cir. 2010).

Saliba, 828 F.3d at 189.

### III. DISCUSSION

Section 1429 of the Immigration and Naturalization Act ("INA") provides that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429. The INA defines "lawfully admitted ... for permanent residence" as the "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws...." 8 U.S.C. § 1101(a)(20). The United States Court of Appeals for the Third Circuit has held that, "this definition is somewhat circuitous, and where there is ambiguity, we must give deference to the agency's interpretation, if it is reasonable." Koszelnick v. Sec. Dep't of Homeland Security, 828 F.3d 175, 179 (3d Cir. 2016).

In view of this deference, the Third Circuit has endorsed the Board of Immigration Appeals ("BIA") determination that "an alien who has obtained lawful permanent resident status by fraud, or who was otherwise not entitled to it, has not been lawfully admitted." Id., citing In re Koloamatangi, 23 I. & N. Dec. 548, 550 (B.I.A. 2003) (quoting In re Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983)); and see Saliba, 828 F.3d at 192-93. Naturalization therefore is properly denied where a petitioner's application for permanent residence "fail[s] to conform to substantive legal requirements because it contain[s] material misinformation." Koszelnik, 828 F.3d at 180. A misrepresentation is material if it "tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." Id.

USCIS denied Haser's 2016 application for naturalization because her "adjustment to permanent resident status was based on the approvals of both a fraudulent asylum application and a fraudulent I-495, ... [and, therefore,] permanent resident status was not lawfully acquired." ECF No. 14-12 at 3.

When Haser applied for asylum, the INA provided that "an alien physically present in the United States ... may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee...." 8 U.S.C. § 1158 (eff. 1996). A person may be considered a "refugee" if she has a well-founded fear of persecution because of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42) (eff. Dec. 21, 2000 to Jan. 15, 2002). The undisputed evidence establishes that Haser represented in 2001 (and again in 2011) that her application for asylum in the United States was based on her fear of persecution in *Iran*. During her January 31, 2012 USCIS Interview, however, Haser conceded that she moved from Iran to Sweden in 1986 and resided in Sweden up until her entry in the United States in 2000. ECF No. 14-10 at 4. Haser further concedes that her asylum application

contained materially fraudulent statements, but she attributes the statements to third parties. ECF Nos. 14-11, 18.

As to her more recent claims to have fled Sweden as a victim of domestic violence, Haser provided USCIS documentation that she remained in Sweden well over a year after divorce from her allegedly abusive Swedish husband before moving to the United States in 2000. Id. at 4, 6. Her passport reveals that during that year, she was free to travel independently to the United States at least five times. Moreover, at the time of her 2012 interview, Haser did not express or show fear of persecution in Sweden based on any protected status.

Under these circumstances, Sweden's grant of citizenship to Haser bars her status as a lawful refugee from Iran. In 1996, Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIA"), which bars asylum to an alien "firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi); see also 8 C.F.R. § 208.13(c)(1)("For applications filed on or after April 1, 1997, an applicant shall not qualify for asylum if section … 208(b)(2 of the Act [8 U.S.C. § 1158(b)(2)] applies to the applicant."). An alien is considered "firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement …." 8 C.F.R. § 208.15. As a result, when Haser applied for asylum in the United States, she did not meet the definition of refugee and, absent her material misrepresentations, she would not have been granted asylum or lawful permanent resident status.

Haser contends that she has been improperly denied naturalization because any fraud in her application was committed by an unscrupulous *notario*, who she states drafted her application, and an immigration official, who would not let her explain that she fled Sweden as a victim of

domestic violence, and who allegedly said her application would be approved if she went on a date with him. ECF No. 14-11. These allegations do not aid her petition.

It is well settled that even where an applicant has not participated in or had knowledge of fraudulently obtained immigration benefits, unlawfully obtained asylum or permanent resident status cannot support an application for purposes of naturalization. See, e.g., Kadirov v. Beers, 71 F. Supp. 3d 519, 522-524 (E.D. Pa. 2014), *aff'd*, 627 F. App'x 125 (Sep. 21, 2015). In Kadirov, USCIS determined that children who entered the United States as derivative asylees based on their father's fraudulent misrepresentations were ineligible for naturalization. The district court granted summary judgment in favor of USCIS because despite the plaintiffs' personal innocence, fraud voids ab initio lawful admission for permanent residence. The district court held that to decide otherwise would encourage fraud for personal or derivative benefit. Id., 71 F. Supp. 3d at 523, citing Walker v. Holder, 589 F.3d 12, 21 (1st Cir. 2009). Thus, permanent resident status procured by fraud is void, because the otherwise innocent applicant was never lawfully admitted. Gallimore v. Att'y Gen., 619 F.3d 216, 223 (3d Cir. 2010); and see, Jin Mei Lin v. Sec'y U.S. Dep't of Homeland Sec., 613 F. App'x 207, 208 (3d Cir. 2015) (naturalization application properly denied children where permanent resident status was not based on lawful admission because of father's sham marriage). In this case, even if Haser's assertions of innocence are true, they are of no consequence because she was never lawfully admitted permanent resident status, and therefore has not met the requirements for naturalization.

Haser separately argues that naturalization was wrongfully denied because her current application is based on her most recent marriage to an American citizen. Even so, her status as a permanent resident is based on her application for asylum, which she concedes was procured by fraud. As a result, at present, Haser does not qualify for naturalization on any basis, including

13

marriage, because she was never "lawfully admitted to the United States for permanent residence."
8 U.S.C. § 1429; see also, Saliba, 828 F.3d at 190; Gallimore, 619 F.3d at 223.

In summary, Haser bears the burden of showing her entitlement to naturalization. See, e.g., 8 U.S.C. § 1439; United States v. Szehinskyj, 277 F.3d 331, 334 (3d Cir. 2002). This burden requires Haser to present evidence of substantive compliance with the requirements for obtaining lawful permanent resident status. See Gallimore, 619 F.3d at 223. Because Haser cannot show that she was lawfully admitted as a permanent resident, there is no genuine issue of material fact as to her eligibility for naturalization, and summary judgment is properly entered.

## IV.  CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendants Kristal Brown and Michael Horvath is properly granted. The following Order therefore is entered:

### **ORDER**

AND NOW, this 25th day of February, 2020, upon consideration of Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment, filed by Defendants Kristal Brown and Michael Horvath, ECF No. 12, and the briefs and exhibits filed in support and in opposition thereto, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED, and this case is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if Plaintiff wishes to appeal from this Order she must do so within thirty (30)

days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

/s/ Maureen P. Kelly<br>
MAUREEN P. KELLY<br>
UNITED STATES MAGISTRATE JUDGE

cc:   All participants or counsel of record by Notice of Electronic Filing